# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIREFOX FARM LLC and CHRISTOPHER J. SOMMA,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN WALKER and JULIE MEADER,<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:25-cv-12176<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, FireFox Farm LLC ("FireFox Farm") and Christopher J. Somma ("Mr. Somma") (together "Plaintiffs"), by and through their attorneys, Somma Law PLLC complain against Shawn Walker ("Ms. Walker") and Julie Meader ("Ms. Meader") (together "Defendants") and in support thereof state as follows:

## INTRODUCTION

1.     This is a case about two vindictive women who devised a scheme to sabotage a horse show at FireFox Farm.  Ms. Walker originally boarded a horse at FireFox Farm.  On May 18, 2025, Ms. Walker and her trusty sidekick Ms. Meader moved Ms. Walker's horse from FireFox Farm to Around the Bend Farm.  Due to actionable conduct by Ms. Meader, FireFox Farm banned her from the property which Ms. Meader herself acknowledged via Facebook messenger.  Despite this on Saturday, August 2, 2025, Defendants arrived at the property.  Mr. Somma met them both at the entrance of the farm and demanded that they not enter the farm.  Not only did they both walk past Mr. Somma, they argued with him over their right to be at the

farm.  Mr. Somma continued to demand they leave, that police were being called and that they both were criminally trespassing on the property.

2.    Both women continued to walk down the aisle ignoring the demands to leave the property and approached a horse named Kyara owned by FireFox Farm.  Ms. Walker extended her hand inside the stall and touched Kyara.  All of this was captured on video.  Out of the concern for the safety of the horse and because of the belligerence exhibited Defendants to concede to the demands to vacate the property, Mr. Somma attempted to physically remove Ms. Walker from both the horse and the property with an open palm that was visible recorded on video.  Ms. Walker planted her feet and Ms. Meader accused Mr. Somma of assault.  Finally, both women left the property but not without Ms. Walker sticking her middle finger up at Mr. Somma and Ms. Meader stating "I think we've got enough Shawn, he put his hands on you. Defendants conspired to both disrupt the horse show, commit criminal trespass, trespass to the horse and force Mr. Somma and FireFox Farm to protect its property, the show, its patrons and its horses by physical ejectment  As if this were not enough, Ms. Walker then attempted to press charges against Mr. Somma for an alleged assault which was nothing more than an abuse of process.  This belligerent and deplorable behavior should not be condoned or even tolerated by this Court.

**THE PARTIES**

3.    Plaintiff, FireFox Farm LLC, is a New Hampshire limited liability company with an address of 130 Mill Road, Durham, New Hampshire 03824 and is domiciled in New Hampshire.

4.    Plaintiff, Christopher J. Somma, is an individual with a residential address of 130 Mill Road, Durham, New Hampshire 03824.

5.      Defendant, Shawn Walker, is an individual with a residential address of Willard Circle, Andover, Massachusetts 01810.

6.      Defendant, Julie Meader, is an individual with an address of 140 Lincoln Road, Apartment 312, Lincoln, Massachusetts 01773.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as damages alleged exceed $75,000 and there is complete diversity between the parties.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the majority of events occurred in Chelmsford, Massachusetts and both defendants reside in this district.

## FACTUAL BACKGROUND

9.      FireFox Farm leases the property at 20 Proctor Road, Chelmsford, Massachusetts. The farm is nestled on an expansive property with ten (10) acres of land with multiple paddocks, twenty-two stalls, tack rooms, office, lounge, wash stalls, driveways and parking as well as an outdoor and indoor riding arena and pasture.

10.     Ms. Walker is a former boarder of her horse Alec at FireFox Farm.  Ms. Meader, who does not own a horse, is typically with Ms. Walker and often came to FireFox Farm independently or with Ms. Walker.

11.     On or about May 18, 2025, Ms. Walker decided to move her horse from FireFox Farm to Around the Bend Farm.

12.     Due to the conduct of Defendants at the farm – which will be the subject of an additional lawsuit, Ms. Meader was told via Facebook messenger on May 18, 2025 at 10:02 am, that she was no longer allowed on the property.  Ms. Meader acknowledged this by responding directly to the message at 10:35 a.m. that same day.

13.    On August 2, 2025, FireFox Farm hosted the FireFox Farm LLC Breed Show 1 & 2.  While this event was open to the public Ms. Meader was still prohibited from the property as that prohibition had not been revoked by FireFox Farm.

14.    This horse show was extremely important to FireFox Farm as it was its first horse show in its history that it hosted and took a significant amount of coordinatation, time, money and manpower.  It was imperative that the show be successful as FireFox Farm was asked by the New England Dressage Association to host additional shows in 2026.  These shows are extremely important to the business and business model of FireFox Farm and both Defendants knew this due to their past relationship with FireFox Farm.

15.    There were approximately 100+ people each day of the horse show.  Vendors, exhibitors, trainers, owners, members of the New England Dressage Association and very important members of various horse membership organizations and international representatives from other breed organizations were present.  In fact, twenty-four additional stalls had to be rented as horses were staying overnight at the farm itself and the temporary stalls in addition to the twenty-two stalls inside the barn that were being used.

16.    In the afternoon of the first day on August 2, 2025, Defendants arrived at FireFox Farm.  They parked their car at the front of the property and walked to the entrance.

17.    Mr. Somma was walking out of the entrance when he met them at the door. Mr. Somma was stunned as Ms. Meader was told not to come to the property.

18.    Mr. Somma demanded that both Defendants not step foot in the farm.  Mr. Somma specifically told Ms. Meader that she was not allowed onto the property again due to the notice.  Despite these demands, Defendants walked right past Mr. Somma.[1]

---

[1] Mass. Gen. Laws ch. 120 states as follows: "Whoever, without right entered or remains in or upon the..buildings…after have been forbidden to do so by the person who has lawful control of said premises,

19.     Mr. Somma continued to walk next to both Defendants demanding that they leave the property immediately.

20.     Ms. Walker stated that FireFox Farm did not lease the property and that it was "owned by Jayden" which is not true and she knew that.

21.     Mr. Somma demanded again that Defendants leave.

22.     Defendants then said that they were invited to FireFox Farm. Mr. Somma demanded again that they leave and said that even if they were invited that invitation was revoked by Mr. Somma's demand to leave the property.

23.     Ms. Walker then claimed that Heather Stone of the New England Dressage Association said she could be there. Mr. Somma again demanded that both Defendants leave and that he was calling the police and getting the other owner of the farm.

24.     Ms. Walker then stated to Mr. Somma "Be careful Christopher, you wouldn't want to cause a scene in front of all these people." Mr. Somma again demanded that both Defendants leave the farm. Multiple attendees of the horse show witnessed this conduct by Defendants and written statements will be submitted in due time.

25.     Mr. Somma called 911 and walked down another aisle to get the other owner. When the other owner could not be located immediately Mr. Somma walked swiftly back to Defendants.

26.     Defendants walked the entire length of the stable to a horse named Kyara. Mr. Somma observed Ms. Walker sticking her hand into the stall and touching Kyara without permission.

---

whether directly or by notice posted hereon, shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment.

27.    Out of the concern for the safety of the horse and because of the belligerence exhibited Defendants to concede to the demands to vacate the property, Mr. Somma attempted to physically remove Ms. Walker from both the horse and the property by placing an open palm on her side in an effort to eject her from the property.  Ms. Walker refused to budge.

28.    Ms. Meader exclaimed "you put your hands on her.  That is assault."  Mr. Somma then walked away to call the police a second time.  Ms. Meader was incorrect.

29.    Under Massachusetts law, Mr. Somma was entitled to defend the personal property of the farm that he owns and eject trespassers from the premises and to protect his personal assets and animals.

30.    Defense of property relates "to the right to use limited force to defend personal property from theft or destruction and real property from unwelcome invasion." *Commonwealth v. Haddock,* 46 Mass. App. Ct. 246, 248 n.2 (1999).  A person must present "credible evidence" that they were acting in defense of property to raise the issue.  *Id.* At 248.

31.    Likewise, a person "may defend or regain [their' momentarily interrupted possession by the use of reasonable force, short of wounding or the employment of a dangerous weapon." *Commonwealth v. Donahue,* 148 Mass. 529, 531 (1889).  Defense of property may include ejecting a trespasser.  *Haddock,* 46 Mass. App. Ct. at 248.

32.    Here, Mr. Somma, on behalf of FireFox Farm defended both the personal property (Kyara the horse) and the farm (real property) from Defendants and rightfully could.

33.    Mr. Somma then walked away and called the police a second time.

34.    Ms. Meader then stated "I think we've got enough Shawn, he put his hands on you."  This comment showcased the conspiracy between Defendants to commit these unlawful

acts and showcased that Defendants conspired to provoke an altercation at the horse show between the farm and themselves.

36.    Finally, both women left the property but not without Ms. Walker sticking her middle finger up at Mr. Somma as he was walking away.

36.    Defendants conspired to both disrupt the horse show, commit criminal trespass, trespass to the horse and force Mr. Somma and FireFox Farm to protect its property, the show, its patrons and its horses.  As they drove away, Defendants stuck their middle finger up again at Mr. Somma.  This was witnessed by USDF Show Secretary Connie Brown and she will provide a statement to this effect.

37.    As if this were not enough, both Defendants attempted press charges against Mr. Somma for an alleged assault which was nothing more than an abuse of process.

38.    Defendants spent approximately four hours at the police department attempting to convince the police that Mr. Somma hit Ms. Walker which is patently false.  All of the events were captured on video which was provided to the police department.

39.    When they did not get what they wanted they went to the State Police.  When that did not work they went back to the Chelmsford Police Department.  Mr. Somma was well within his right to eject both trespassers from the premises and protect the personal property of the farm.

40.    Defendants then began disseminating false and defamatory information claiming that Mr. Somma hit Ms. Walker.  This was confirmed via emailed by Holly Bonanno at 9:06 a.m. when she emailed Mr. Somma in response to a Cease and Desist email sent to her over another incident when she stated to Mr. Somma "Keep hitting women lmao"

## CAUSES OF ACTION

### COUNT I -TRESPASS
### (Julie Meader)

41.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 40 above and incorporates those allegations herein by reference.

42.    Ms. Meader was told on May 18, 2025 via Facebook messenger that she was not allowed FireFox Farm.  She responded to the message that same day at 10:35 a.m. thereby acknowledging receipt of the message

43.    On August 2, 2025 Ms. Meader attempted to the premises belonging to FireFox Farm.  Mr. Somma stopped Ms. Meader at the entrance and demanded that she not enter the business establishment.

44.    Ms. Meader intentionally walked into the business establishment and had no permission to be there by the owners of FireFox Farm and in fact was explicitly told to leave multiple times and she refused.

45.    Ms. Meader's entry was intentional and unauthorized.

46.    As a result of Ms. Meader's actions, FireFox Farm has been damaged.

47.    Wherefore, Plaintiffs demand judgment against Julie Meader in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable.  Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages to stop the conduct in the amount to be determined by the Court but in excess of $250,000.00.

## COUNT II - TRESPASS
### (Shawn Walker)

48.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 47 above and incorporates those allegations herein by reference.

49.    On August 2, 2025, Ms. Walker went to FireFox Farm.  Mr. Somma met Ms. Walker at the entrance of the farm and demanded that she not step foot onto the premises.  Mr. Somma specifically told Ms. Walker that she was not allowed onto the property.  Despite these demands, Ms. Walker walked right past Mr. Somma.

50.    Mr. Somma continued to walk next to Ms. Walker demanding that they leave the property immediately.

51.    Ms. Walker stated that FireFox Farm did not lease the property and that it was "owned by Jayden" which is not true and she knew that.

52.    Mr. Somma demanded again that Ms. Walker leave.

53.    Defendants then said that they were invited to FireFox Farm.  Mr. Somma demanded again that they leave and said that even if they were invited that invitation was revoked by Mr. Somma's demand to leave the property.

54.    Ms. Walker then claimed that Heather Stone of the New England Dressage Association said she could be there.  Mr. Somma again demanded that Ms. Walker leave and that he was calling the police and getting the other owner of the farm.

55.    Ms. Walker then stated to Mr. Somma "Be careful Christopher, you wouldn't want to cause a scene in front of all these people."  Mr. Somma again demanded that she leave the farm.

56.    Mr. Somma called 911 and walked down another aisle to get the other owner. When the other owner could not be located Mr. Somma walked swiftly back to Ms. Walker.

57.    Defendants walked the entire length of the stable to a horse named Kyara.  Mr. Somma observed Ms. Walker sticking her hand into the stall and touching Kyara without permission.

58.    Out of the concern for the safety of the horse and because of the belligerence exhibited Defendants to concede to the demands to vacate the property, Mr. Somma attempted to physically remove Ms. Walker from both the horse and the property by placing an open palm on her side in an effort to eject her from the property.  Ms. Walker refused to budge.

59.    Ms. Walker intentionally walked into the business establishment and had no permission to be there by the owners of FireFox Farm and in fact was explicitly told to leave multiple times and she refused.

60.    Ms. Walker's entry was intentional and unauthorized.

61.    As a result of Ms. Meader's actions, FireFox Farm has been damaged.

62.    Wherefore, Plaintiffs demand judgment against Shawn Walker in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable.  Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages to stop the conduct in the amount to be determined by the Court but in excess of $250,000.00.

## COUNT III – TRESPASS TO CHATTELS
### (Shawn Walker)

63.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 62 above and incorporates those allegations herein by reference.

64.    On August 2, 2025 Ms. Walker went to FireFox Farm.  Mr. Somma met Ms. Walker at the entrance of the farm and demanded that she not step foot onto the premises.  Mr.

Somma specifically told Ms. Walker that she was not allowed onto the property. Despite these demands, Ms. Walker walked right past Mr. Somma.

65.    Mr. Somma continued to walk next to Ms. Walker demanding that they leave the property immediately.

66.    Ms. Walker stated that FireFox Farm did not lease the property and that it was "owned by Jayden" which is not true and she knew that.

67.    Mr. Somma demanded again that Ms. Walker leave.

68.    Defendants then said that they were invited to FireFox Farm. Mr. Somma demanded again that they leave and said that even if they were invited that invitation was revoked by Mr. Somma's demand to leave the property.

69.    Ms. Walker then claimed that Heather Stone of the New England Dressage Association said she could be there. Mr. Somma again demanded that Ms. Walker leave and that he was calling the police and getting the other owner of the farm.

70.    Ms. Walker then stated to Mr. Somma "Be careful Christopher, you wouldn't want to cause a scene in front of all these people." Mr. Somma again demanded that she leave the farm.

71.    Mr. Somma called 911 and walked down another aisle to get the other owner. When the other owner could not be located Mr. Somma walked swiftly back to Ms. Walker.

72.    Defendants walked the entire length of the stable to a horse named Kyara. Mr. Somma observed Ms. Walker sticking her hand into the stall and touching Kyara without permission.

73.    Out of the concern for the safety of the horse and because of the belligerence exhibited Defendants to concede to the demands to vacate the property, Mr. Somma attempted to

physically remove Ms. Walker from both the horse and the property by placing an open palm on her side in an effort to eject her from the property. Ms. Walker refused to budge.

74.    Ms. Walker intentionally walked into the business establishment and had no permission to be there by the owners of FireFox Farm and in fact was explicitly told to leave multiple times and she refused.

75.    Ms. Walker's touching of Kyara was intentional and unauthorized. In fact, she touched Kyara twice – both times intentional and unauthorized.

76.    As a result of Ms. Meader's actions, FireFox Farm has been damaged.

77.    Wherefore, Plaintiffs demand judgment against Shawn Walker in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable. Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages to stop the conduct in the amount to be determined by the Court but in excess of $250,000.00.

## COUNT IV – FRAUDULENT REPRESENTATION
### (Shawn Walker)

78.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 77 above and incorporates those allegations herein by reference.

79.    On August 2, 2025, Ms. Walker went to FireFox Farm. Mr. Somma met Ms. Walker at the entrance of the farm and demanded that she not to step foot onto the premises. Mr. Somma specifically told Ms. Walker that she was not allowed onto the property. Despite these demands, Ms. Walker walked right past Mr. Somma.

80.    Mr. Somma continued to walk next to Ms. Walker demanding that they leave the property immediately.

81.    Ms. Walker stated that FireFox Farm did not lease the property and that it was "owned by Jayden" which is not true and she knew that.

82.    Mr. Somma demanded again that Ms. Walker leave.

83.    Defendants then said that they were invited to FireFox Farm.  Mr. Somma demanded again that they leave and said that even if they were invited that invitation was revoked by Mr. Somma's demand to leave the property.

84.    Ms. Walker then claimed that Heather Stone of the New England Dressage Association said she could be there.  Mr. Somma again demanded that Ms. Walker leave and that he was calling the police and getting the other owner of the farm.

85.    Ms. Walker then stated to Mr. Somma "Be careful Christopher, you wouldn't want to cause a scene in front of all these people."  Mr. Somma again demanded that she leave the farm.

86.    Heather Stone is affiliated with the New England Dressage Association ("NEDA").  This representation was significant because it would allow her to be on the premises but for the demand by Mr. Somma to leave the premises.  The representation was material.  In fact, Mr. Somma had to ask Connie Brown, who is also affiliated with NEDA if this was true.

87.    It is believed that the representation was false or that Ms. Walker acted with reckless disregard for its truth.  Ms. Walker intended for FireFox Farm to rely on the false representation.  Mr. Somma actually relied on the representation to the point he had to inquiry of Connie Brown if this was true and Mr. Somma again had to demand that Ms. Walker leave the property.

88.    As a result of Ms. Meader's actions, FireFox Farm has been damaged. Wherefore, Plaintiffs demand judgment against Shawn Walker in an amount sufficient to satisfy

the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable. Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages to stop the conduct in the amount to be determined by the Court but in excess of $250,000.00.

### COUNT V – DEFAMATION/LIBEL
### (Shawn Walker and Julie Meader)

89.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 88 above and incorporates those allegations herein by reference.

90.     Defendants then began disseminating false and defamatory information claiming that Mr. Somma hit Ms. Walker.  This was confirmed via emailed by Holly Bonanno at 9:06 a.m. when she emailed Mr. Somma in response to a Cease and Desist email sent to her over another incident when she stated to Mr. Somma "Keep hitting women lmao"

91.     Upon information and belief, Defendants have communicated to third parties in writing that Mr. Somma hit Ms. Walker.  This is patently false as all of the events were captured on video on hitting occurred.

92.     These written statements were false and not an opinion.  These statements were published in writing by Defendants.  These statement were not privileged.

93.     Plaintiffs are entitled to special damages because Defendants are both accusing Mr. Somma of committing a crime where no crime occurred damaging both his reputation and the reputation of FireFox Farm.  The law presumes damages and they do not need to be specifically proven at trial.

94.     Wherefore, Plaintiffs demand judgment against both Defendants in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just,

property and equitable. Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages and special damages in the amount to be determined by the Court but in excess of $250,000.00.

**COUNT VI – DEFAMATION/SLANDER**
**(Shawn Walker and Julie Meader)**

95.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 94 above and incorporates those allegations herein by reference.

96.     Defendants then began disseminating false and defamatory information claiming that Mr. Somma hit Ms. Walker. This was confirmed via emailed by Holly Bonanno at 9:06 a.m. when she emailed Mr. Somma in response to a Cease and Desist email sent to her over another incident when she stated to Mr. Somma "Keep hitting women lmao"

97.     Upon information and belief, Defendants have communicated to third parties that Mr. Somma hit Ms. Walker. This is patently false as all of the events were captured on video on hitting occurred.

98.     These written statements were false and not an opinion. These statements were published in writing by Defendants. These statement were not privileged.

99.     Plaintiffs are entitled to special damages because Defendants are both accusing Mr. Somma of committing a crime where no crime occurred damaging both his reputation and the reputation of FireFox Farm. The law presumes damages and they do not need to be specifically proven at trial.

100.     Wherefore, Plaintiffs demand judgment against both Defendants in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable. Due to the egregious nature of the conduct, Plaintiffs are requesting

punitive damages and special damages in the amount to be determined by the Court but in excess of $100,000.00

## COUNT VII – CIVIL CONSPIRACY
### (Shawn Walker and Julie Meader)

101.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 100 above and incorporates those allegations herein by reference.

102.    Ms. Meader and Ms. Walker agreed to commit the unlawful act of criminal trespass and civil trespass.  They also agreed to do everything they could to disrupt the horse show and force Mr. Somma to physically remove them from the premises.  The agreement between Ms. Walker and Ms. Meader does not have to be in writing and can be inferred by the conduct and statements made.

103.    In the afternoon of the first day on August 2, 2025 Defendants arrived at FireFox Farm.  They parked their car at the front of the property and walked to the entrance.

104.    Mr. Somma was walking out of the entrance when he met them at the door. Mr. Somma stunned as Ms. Meader was told not to come to the property.

105.    Mr. Somma demanded that both Defendant not step foot in the farm.  Mr. Somma specifically told Ms. Meader that she was not allowed onto the property.  Despite these demands, Defendants walked right past Mr. Somma.

106.    Mr. Somma continued to walk next to both Defendants demanding that they leave the property immediately.

107.    Ms. Walker stated that FireFox Farm did not lease the property and that it was "owned by Jayden" which is not true and she knew that.

108.    Mr. Somma demanded again that Defendants leave.

109.    Defendants then said that they were invited to FireFox Farm.    Mr. Somma demanded again that they leave and said that even if they were invited that invitation was revoked by Mr. Somma's demand to leave the property.

110.    Ms. Walker then claimed that Heather Stone of the New England Dressage Association said she could be there.    Mr. Somma again demanded that both Defendants leave and that he was calling the police and getting the other owner of the farm.

111.    Ms. Walker then stated to Mr. Somma "Be careful Christopher, you wouldn't want to cause a scene in front of all these people."    Mr. Somma again demanded that both Defendants leave the farm.

112.    Mr. Somma called 911 and walked down another aisle to get the other owner. When the other owner could not be located Mr. Somma walked swiftly back to Defendants.

113.    Defendants walked the entire length of the stable to a horse named Kyara.    Mr. Somma observed Ms. Walker sticking her hand into the stall and touching Kyara without permission.

114.    Out of the concern for the safety of the horse and because of the belligerence exhibited Defendants to concede to the demands to vacate the property, Mr. Somma attempted to physically remove Ms. Walker from both the horse and the property by placing an open palm on her side in an effort to eject her from the property.    Ms. Walker refused to budge.

115.    Ms. Meader exclaimed "you put your hands on her.    That is assault."    Mr. Somma then walked away to call the police a second time.    Ms. Meader was incorrect.

116.    Under Massachusetts law, Mr. Somma was entitled to defend the personal property of the farm that he owns and eject trespassers from the premises.

117.    Defense of property relates "to the right to use limited force to defend personal property from theft or destruction and real property from unwelcome invasion." *Commonwealth v. Haddock,* 46 Mass. App. Ct. 246, 248 n.2 (1999).  A person must present "credible evidence" that they were acting in defense of property to raise the issue.  *Id.* At 248.

118.    Likewise, a person "may defend or regain [their' momentarily interrupted possession by the use of reasonable force, short of wounding or the employment of a dangerous weapon." *Commonwealth v. Donahue,* 148 Mass. 529, 531 (1889).  Defense of property may include ejecting a trespasser.  *Haddock,* 46 Mass. App. Ct. at 248.

119.    Here, Mr. Somma, on behalf of FireFox Farm defended both the personal property (Kyara the horse) and the farm (real property) from Defendants and rightfully could.

120.    Mr. Somma then walked away and called the police a second time.

121.    Ms. Meader then stated **"I think we've got enough Shawn, he put his hands on you."** (emphasis addeded).  This comment showcased the conspiracy between Defendants to commit these unlawful acts and showcased that Defendants conspired to provoke an altercation at the horse show between the farm and themselves.

122.    Finally, both women left the property but not without Ms. Walker sticking her middle finger up at Mr. Somma as he was walking away.

123.    Wherefore, Plaintiffs demand judgment against both Defendants in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable.  Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages and special damages in the amount to be determined by the Court but in excess of $250,000.00.

## COUNT VIII – ABUSE OF PROCESS
### (Shawn Walker and Julie Meader)

124.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 124 above and incorporates those allegations herein by reference.

125.    Defendants attempted to initiate a criminal process against Mr. Somma for Assault and Battery despite the fact that they were trespassing on the premises and what they were doing was in fact illegal.

126.    The ulterior motive and illegitimate purpose was to force FireFox Farm to physically remove them from the property so they could claim assault and battery and disrupt the horse show.  They did this an effort to damage the reputations of both Mr. Somma and FireFox Farm as well as to cause emotional distress and embarrass Mr. Somma.

127.    In fact, Defendants spent approximately four hours at the police department attempting to coerce them into arresting Mr. Somma.  Ms. Meader for her part even threatened Mr. Somma with filing a bar complaint for attempting to physically remove Ms. Walker from the farm's animals/property and the premises because he is also a practicing attorney.

128.    Defendants abused the process for ill gotten gains and this should not be tolerated by this Court.

129.    Wherefore, Plaintiffs demand judgment against both Defendants in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable.  Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages and special damages in the amount to be determined by the Court but in excess of $100,000.00.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Christopher Somma v. Shawn Walker and Julie Meader)

130.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 124 above and incorporates those allegations herein by reference.

131.    In Massachusetts, a claim for Intentional Infliction of Emotional Distress requires proving the Defendants' conduct was outrageous and caused severe emotional distress. Specifically, the elements are: 1) the defendant acted intentionally or recklessly; 2) their conduct was extreme and outrageous; 3) the conduct caused severe emotional distress; and 4) the conduct was more than malicious or intentional insults, indignities, or threats.

132.    Defendants know that Mr. Somma suffers from substance use disorder.  They also know that Mr. Somma is over six (6) years sober and prone to anxiety, depression and stress.

133.    All of the conduct as alleged in this Complaint was outrageous and designed to cause severe emotional distress.

134.    As showcases, Defendants acted intentionally and recklessly.

135.    Defendants' behavior was extreme and outrageous as they both violated the criminal statute and abused the process by attempting to have Mr. Somma arrested.

136.    This caused Mr. Somma extreme emotional distress which had physical manifestations.

137.    The conduct of the Defendants was malicious and intentional and they knew this as showcased by their comments of bar complaints, assault, hitting and causing a scene in front of the horse show attendees.

138.    Mr. Somma suffered severe anxiety including physical pain, chest pains, shortness of breath and cried once Defendants finally left the property.  These symptoms are ongoing as of the date of this Complaint.

139.    Wherefore, Christopher Somma demand judgment against both Defendants in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable.  Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages and special damages in the amount to be determined by the Court but in excess of $250,000.00.

### COUNT X – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (Christopher Somma v. Shawn Walker and Julie Meader)

140.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 138 above and incorporates those allegations herein by reference.

141.    In Massachusetts, a negligent infliction of emotional distress claim requires proving the Defendants' negligence caused Mr. Somma's emotional distress, which in turn resulted in physical harm, and that a reasonable person would have suffered similar emotional distress under the circumstances.  Essentially, the plaintiff must demonstrate a duty of care, a breach of that duty, causation between the breach and the emotional distress, and resulting physical harm.

142.    Defendants know that Mr. Somma suffers from substance use disorder.  They also know that Mr. Somma is over six (6) years sober and prone to anxiety, depression and stress.

143.    All of the conduct as alleged in this Complaint was outrageous and designed to cause severe emotional distress.

144.    As showcases, Defendants acted intentionally and recklessly.

145.    Defendants' behavior was extreme and outrageous as they both violated the criminal statute and abused the process by attempting to have Mr. Somma arrested.

146.    This caused Mr. Somma extreme emotional distress which had physical manifestations.

147.    Defendants owed a general duty of care to Mr. Somma.  Defendants knew that their actions would have a foreseeable risk of harm to Mr. Somma.

148.    Defendants failed to exercise reasonable care resulting in harm to Mr. Somma.

149.    The negligent conduct of Defendants had a direct cause of Mr. Somma's emotional distress and this was a foreseeable consequence of the outrageous and illegal actions of Defendants.

150.    Wherefore, Christopher Somma demand judgment against both Defendants in an amount sufficient to satisfy the jurisdictional requirements of this Honorable Court plus interest, costs, attorney's fees and any and all such further relief as this Honorable Court may deem just, property and equitable.  Due to the egregious nature of the conduct, Plaintiffs are requesting punitive damages and special damages in the amount to be determined by the Court but in excess of $250,000.00

## **RELIEF REQUESTED**

**WHEREFORE**, FireFox Farm LLC and Christopher J. Somma respectfully requests that this Honorable Court:

A.    Award damages to Plaintiffs in excess of $250,000 including consequential damages, compensatory damages, punitive damages and special damages;

B.    Enter judgment in favor Plaintiffs on all counts of the Complaint;

C.    Award Plaintiffs their costs and fees, including its attorneys' fees, incurred in connection with this action; and

D.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FIREFOX FARM LLC and CHRISTOPHER J. SOMMA

By their attorneys,

Dated: August 4, 2025

_/s/ Christopher J. Somma_
Christopher J. Somma (BBO # 624988)
SOMMA LAW PLLC
130 Mill Road
Durham, New Hampshire 03824
Tel. 603.733.0092
Christopher@sommalawpllc.com