UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-cv-12176-RGS

FIREFOX FARM LLC and CHRISTOPHER J. SOMMA

v.

SHAWN WALKER and JULIE MEADER

MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR
DECLARATORY JUDGMENT AND PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

April 24, 2026

STEARNS, D.J.

Plaintiff Christopher Somma is an owner of plaintiff FireFox Farm LLC (FireFox Farm). Am. Compl. [Dkt. # 11] ¶ 3. FireFox Farm, a New Hampshire company, leases a property in Massachusetts that includes a facility used to board and breed horses. *Id.* ¶ 9. Defendant Shawn Walker boarded her horse at the property until May of 2025; defendant Julie Meader[1] regularly accompanied Walker on her visits to the property. *Id.* ¶¶ 12-13. In this case, which arises under the court's diversity jurisdiction,[2]

---

[1] Meader is also referred to as Julie Taylor in the pleadings. *See e.g.,* Meader's Am. Answer, Affirmative Defenses, and Countercl. [Dkt. # 31] (Meader's Am. Answer).

[2] As this court has previously ruled, the Amended Complaint plausibly demonstrates that the amount in controversy requirement is met, and it

plaintiffs allege that defendants committed several tort law violations following Walker's decision to board her horse elsewhere.  Am. Compl. ¶¶ 1-2.  These included trespassing by entering FireFox Farm during a horse show, contrary to Somma's efforts to bar them from the property.  *Id.* ¶¶ 20-34.  As a result, plaintiffs bring one count of trespass against Meader (Count I) and one count of trespass against Walker (Count II). [3] *Id.* ¶¶ 49-70.  Walker and Meader move for declaratory judgment[4] on these two counts, while

---

adequately alleges complete diversity.  [Dkt # 23].  The domicile of both plaintiffs is New Hampshire, and both defendants are domiciled in Massachusetts.  *See* Am. Compl. ¶¶ 3-6.

[3] The other violations alleged in the Amended Complaint, which are not directly relevant to this dispute, are as follows: one count of trespass to chattels against Walker (Count III), two counts of fraudulent misrepresentation against Walker (Counts IV and V), one count of tortious interference against Walker and Meader (Count VI), two counts of defamation against Walker and Meader (Counts VII and VIII), one count of commercial disparagement against Walker and Meader (Count IX), and one count of civil conspiracy against Walker and Meader (Count X).  Am. Compl. ¶¶ 71-191.

[4] Defendants ask the court to grant declaratory judgment in their favor pursuant to 28 U.S.C. § 2201, but they label their motions for declaratory judgment as "counterclaims."  *See* Meader's Am. Answer at 7; Walker's Am. Answer, Affirmative Defenses, and Countercl. [Dkt. # 30] (Walker's Am. Answer) at 3.  For accuracy, the court treats defendants' motions as motions for declaratory judgment.

In addition, plaintiffs move to dismiss defendants' "counterclaims." [Dkt. # 35-36].    Because the "counterclaims" are more accurately characterized as motions for summary judgment, the court treats plaintiffs'

plaintiffs move for judgment on the pleadings with respect to the trespass claim against Walker (Count II).[5]

---

motions to dismiss the "counterclaims" as oppositions to defendants' motions for declaratory judgment.

Finally, the court notes that plaintiffs previously moved to dismiss defendants' counterclaims, [Dkt. # 27-28], prior to defendants amending their counterclaims pursuant to Fed. R. Civ. P. 15(a)(1). As a result, the court finds these previous motions moot; they are replaced by the amended versions of these pleadings, [Dkt. # 35-36].

[5] In addition to these motions, defendants filed a motion for leave to move for judgment on the pleadings with respect to Somma. [Dkt. # 52]. In requesting leave to file the motion, defendants argue that this case implicates judicial estoppel because Somma is the debtor in a separate Chapter 13 bankruptcy proceeding. Defs.' Mem in Supp. of Mot. [Dkt. # 53] (Defs.' Mem.) at 1. Somma's proceeding, which is currently pending before the Bankruptcy Court, was filed in the District of New Hampshire in 2022, prior to the 2025 accrual of the causes of action in this case. Pl.'s Mem. in Opp'n to Mot. [Dkt. # 55-1] at 2. Somma disclosed this action to the Bankruptcy Court on March 18, 2026, Pl.'s Sur-Reply [Dkt # 50] at 1, after this court invited him to file a sur-reply stating whether he had done so, [Dkt. # 48]. The bankruptcy court has not asserted jurisdiction over this action to this court's knowledge. Additionally, in defendants' motion for leave to move for judgment on the pleadings, they also suggest that Somma is not necessarily the correct party to bring his claims under Fed. R. Civ P. 17(a), which requires that "[a]n action must be prosecuted in the name of the real party in interest," presumably the bankruptcy trustee. *See* Defs.' Mem at 4.

Under Fed. R. Civ P. 12(c), a party may file a motion for judgment on the pleadings without leave of court, provided that the motion does not delay trial. While Walker and Meader are permitted to timely file the motion for judgment on the pleadings, the court cautions defendants that their motion for leave to file has not adequately demonstrated either that this case implicates the doctrine of judicial estoppel — which "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding," *New Hampshire v. Maine,* 532 U.S.

3

## BACKGROUND

Plaintiffs allege the following facts.  Meader and Walker were present at FireFox Farm on the morning of May 18, 2025, as Walker began relocating her horse.  Am. Compl. ¶ 13.  That day, Somma sent Meader a message on Facebook to inform her that she was no longer allowed on the premises.[6]  *Id.* ¶ 17.  Meader acknowledged receipt.  *Id.*

Plaintiffs further allege that subsequently, on August 2, 2025, FireFox Farm hosted a horse show, and both defendants entered the premises.  *Id.* ¶¶ 20-23.  Upon defendants' arrival, Somma repeatedly "demanded" they leave, and he called the police.  *Id.* ¶¶ 25-32.  Walker and Meader nevertheless walked through the property's stable, and Walker placed her hand on one of FireFox Farm's horses through its stall.  *Id.* ¶ 33.  Somma alleges that, in response, he "plac[ed] an open palm on her [Walker's] side in an

---

742, 749 (2001), quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000) — or that Somma is the incorrect party to bring this case.

[6] Somma allegedly sent the message because he had heard from another FireFox Farm customer, who was on the premises, that Meader had approached that customer and urged her to break her boarding contract with FireFox Farm, making the "baseless accusation[]" that FireFox Farm was going to close its doors.  *Id.* ¶¶ 14, 17.  Meader denies that she had this interaction with the customer.  Meader's App. to Answer [Dkt. # 31-1] ¶¶ 14, 17.

[unsuccessful] effort to eject her from the property."[7] *Id.* ¶ 34. Somma made a second phone call to the police, and defendants left the property. *Id.* ¶¶ 35, 42. As a result of these events, plaintiffs claim Walker and Meader committed trespass.[8]

Walker and Meader dispute plaintiffs' account and allege the following as facts. First, defendants did not believe that they were barred from the horse show. Walker's Am. Answer at 3; Meader's Am. Answer at 5. They claim the event was open to the public, and they were permitted to attend as invitees. *Id.* Moreover, Walker states that she was encouraged by "event personnel and/or organizers" to attend the horse show,[9] and that she "affirmatively indicated her intention to attend" in advance, without

---

[7] Somma's actions led Meader to exclaim that Somma assaulted Walker, before saying to Walker: "I think we've got enough Shawn, he put his hands on you." *Id.* ¶ 35, 41. Meader disputes the accuracy of the quotation and denies Somma's characterization of her statements. Meader's App. to Answer ¶ 38.

[8] Additional tort claims contained in the Amended Complaint allegedly followed this incident. Specifically, plaintiffs claim that Walker and Meader "began disseminating false and defamatory information claiming that Mr. Somma hit Ms. Walker." *Id.* ¶¶ 47-48. As a result, plaintiffs claim that FireFox Farm has lost business because, any time it advertises its stalls, it "becomes a target of online vitriol." *Id.* ¶ 48. Defendants deny these claims. Meader's App. to Answer ¶¶ 47-48; Walker's App. to Answer [Dkt # 31-1] ¶¶ 47-48.

[9] Walker notes that she had previously competed in horse show competitions. Walker's Am. Answer at 3.

receiving any notice that she was not permitted to do so.  Walker's Am. Answer at 3.  Similarly, Meader alleges that she attended the event as a "spectator and invitee," and she disputes that Somma's Facebook message to her in May of 2025 "operated as a clear, effective prohibition" regarding her attendance at the horse show.  Meader's Am. Answer at 5-6.

Defendants further allege that, upon their arrival at the event, Somma initially greeted them without indicating that he wanted them to leave.  Walker's Am. Answer at 3; Meader's Am. Answer at 5.  However, Walker states that once she entered the stable and interacted with a horse,[10] "Somma, raised his voice, and made physical contact by pushing [her] backward toward the barn exit."  Walker's Am. Answer at 3.[11]  Similarly, Meader alleges: "Only after [defendants] . . . were inside the barn did Somma begin yelling words to the effect that they must leave."  Meader's Am. Answer at 5.  Defendants allege that they never left the area of the property

---

[10] Walker agrees with plaintiffs that she did touch a horse while at the event, but she alleges additional context on the nature of the interaction. Specifically, she states that she knew the horse in question from previously training and showing it, and that she "briefly paused" to touch the animal's nose.  Walker's Am. Answer at 3.

[11] In her Answer to the Amended Complaint, Walker states: "Defendant admits that Plaintiff made statements asking Defendants to leave, but lacks knowledge or information sufficient to form a belief as to the sequence, timing, or number of such statements . . ."  Walker's App. to Answer ¶ 31.

designated as event space prior to their departure from the event. Walker's Am. Answer at 3; Meader's Am. Answer at 5.

## DISCUSSION

**Declaratory Judgment**

Meader and Walker move for declaratory judgment on defendants' trespass claims (Counts I and II). The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (mirrored by Fed. R. Civ. P. 57), "does not itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis . . . . Consequently, federal courts retain substantial discretion in deciding whether to grant declaratory relief." *Ernst & Young v. Depositors Econ. Prot. Corp.,* 45 F.3d 530, 534 (1st Cir. 1995).

For a claim to be ripe in the declaratory judgment context, two prongs must be met — fitness for review and hardship. *Id.* at 535; *see also Abbott Lab'ys v. Gardner,* 387 U.S. 136, 149 (1967). Fitness involves the question of whether "the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Massachusetts Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't,* 973 F.2d 18, 20 (1st Cir.1992) (per curiam). "[T]he hallmark of cognizable hardship is usually direct and immediate harm, [although] other kinds of injuries occasionally may

suffice." *Ernst & Young,* 45 F.3d at 536. "The key question involves the usefulness of a declaratory judgment, that is, the extent to which the desired declaration 'would be of practical assistance in setting the underlying controversy to rest.'" *Id.* at 537, quoting *Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 693 (1st Cir. 1994).

In this case, the first prong is met because the issue of trespass by Walker and Meader does not involve contingent events and is currently fit for the court's review. However, the second prong (hardship and useful assistance) is not met because the court does not believe that declaratory judgment would be of any expedient value at this stage in the proceedings. Therefore, the court denies defendants' motions for declaratory judgment.

**Judgment on the Pleadings**

Plaintiffs move for judgment on the pleadings with respect to their trespass claim against Walker (Count II). [Dkt. # 51]. Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole. "In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf*

8

*Coast Bank & Tr. Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . " *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

Under Massachusetts law, "[t]o sustain a claim for trespass a plaintiff must show (1) plaintiff's actual possession of the property at issue and (2) an intentional and illegal entry by defendant."[12] *Fed. Ins. Co. v. Boston Water & Sewer Comm'n*, 583 F. Supp. 2d 225, 229 (D. Mass. 2008). Viewing all the facts in the light most favorable to Walker, as the nonmoving party, the pleadings contain disputes regarding the material facts that make up the elements of trespass. Notably, the parties dispute whether Walker was clearly informed that she was barred from the horse show prior to her

---

[12] Massachusetts law governs plaintiffs' trespass claim against Walker because the alleged offense took place at FireFox Farm, located in Massachusetts. *See Dunfey v. Roger Williams Univ.*, 824 F. Supp. 18, 21 (D. Mass. 1993) ("Under Massachusetts choice of law rules, tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action.")

interaction with Somma in the barn immediately before she left the property.

As a result, the court denies plaintiffs' motion for judgment on the pleadings.

### ORDER

For the forgoing reasons, defendants' motions for declaratory judgment on Counts I and II of the Amended Complaint are <u>DENIED</u>, and plaintiffs' motion for judgment on the pleadings with respect to Count II of the Amended Complaint is also <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE